Jack C. SHUBERT, Appellant,

v.

The FIDELITY & CASUALTY COMPANY
OF NEW YORK, Appellee.

No. 15774.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 13, 1971.

Rehearing Denied June 3, 1971.

Robert S. Pieratt, Thomas M. Ryan,
Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, David J. Beck, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from an instructed verdict in a Workmen's Compensation case. Appellant filed for compensation benefits as a result of injuries allegedly sustained in the course and scope of his employment. The Industrial Accident Board denied his claim and an appeal was taken to the District Court. After the presentation of the evidence and the arguments, the case was submitted to the jury. Special Issue No. 3 inquired whether the injury was sustained in the course of employment with plaintiff's [Shubert's] employer. After deliberating for some considerable time the jury, through its foreman, informed the court that they were hopelessly deadlocked as to certain of the issues, among them Special Issue No. 3. The court then discharged the jury and took under consideration again appellee's motion for a directed verdict. The court sustained appellee's motion and subsequently entered judgment that Shubert take nothing from appellee. Shubert has timely appealed.

■ Both parties have agreed that this appeal is limited to the question of whether the injuries sustained were sustained in the course of employment. A directed verdict presents a no evidence point. In other words, viewing the evidence in the light most favorable to Shubert, was there any evidence from which the jury could have reached an answer that the injury was sustained in the course of employment? Constant v. Howe, 436 S.W.2d 115 (Tex. 1968); Clevenger v. Liberty Mutual Insurance Company, 396 S.W.2d 174 (Tex.Civ. App.—Dallas 1965, writ ref'd, n. r. e.).

Shubert was employed as a diesel mechanic for F.C.S. Truck Service. On the morning of November 20, 1967, Shubert was running late for work. He left home without breakfast. He arrived at his place of employment in the 6700 block of Telephone Road at or about 7:00 a. m. Shubert testified that he looked at his watch on the sun visor of his car, and it said 7:05 a. m. Other witnesses placed the time a little before 7:00 a. m.

Shubert parked his car in his employer's parking lot and went to the door of the shop. The shop was locked. He returned to his car and removed his tool box from the trunk. He testified that he thought that in the 4 or 5 minutes that it took him to get his tool box, the door might have been opened. He returned with his tool box to the door, but it was still locked. He placed his tool box next to the door and decided to go across the street to a doughnut shop to have a cup of coffee and wait for the shop to open. He testified that it was customary for the mechanics to have a cup of coffee at the doughnut shop before work.

The working hours of Shubert and the other mechanics in the shop were from 7:00 a. m. to 5:00 p. m. Mr. Styles, the owner of the shop, did not keep a rigid schedule. The employees filled out their own time cards, usually at the end of the day. There was no time clock. If an employee were five minutes late, he was not docked pay, but if he were later, he was expected to make up the time at the end of the day.

As Shubert started across the street to the doughnut shop, he testified, Mr. Stutters, a fellow mechanic, and one who Shubert considered his foreman, waved to him to come across the street. Stutters was at the door of the doughnut shop. Shubert started to cross Telephone Road, a six lane divided road at this point. He reached the middle of the third lane and was struck by a car. He testified that he did not remember anything else until he was in the hospital.

Shubert admitted that it was his own decision to go across the street to the doughnut shop, and that no one told him to do so. He admitted that he could have waited at the door of the shop for it to be opened.

He was not going to transact any business for his employer at the doughnut shop.

Stutters testified that he arrived at the parking lot around 7:00 a. m. He looked across the street and saw through the windows that other mechanics were at the doughnut shop. He crossed the street to the doughnut shop just as the mechanics were going back across the street to start work. Just as he arrived at the door of the doughnut shop, a waitress screamed, "Oh no!" Stutters turned and saw Shubert lying on the street.

Mr. Styles, the owner of the shop, testified that when he arrived at work that morning, the accident had already occurred. He arrived at approximately 7:00 a. m. He saw them putting Shubert into the ambulance. Styles confirmed that "practically every morning" his mechanics had coffee at the doughnut shop before work. When he would drive up, they would come back across the street and go to work. Mr. Styles sometimes would go across the street to the doughnut shop and talk to truck drivers whose rigs were being serviced by his mechanics.

■ The Workmen's Compensation law provides generally that in an action by an employee against his employer for injuries sustained in the course of his employment, certain of the common law defenses to such actions will not be available. Vernon's Ann.Texas Revised Civil Statutes Ann. Article 8306 § 1 (1967). The statute is remedial and should be construed liberally to effectuate its purpose. Shelton v. Standard Insurance Co., 389 S.W.2d 290 (Tex.1965). The phrase "injury sustained in the course of employment" is defined in Tex.Rev.Civ.Stat.Ann. Art. 8309 § 1 (1967). The phrase specifically excludes certain injuries not material here, but includes " * * * all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Art. 8309 § 1(4), supra.

■ It is the general rule that injuries sustained while the employee is using public streets are not compensable under the compensation statute. Shelton v. Standard Insurance Co., supra; American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S. W.2d 370 (1957); Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192 (1937). The often stated reason for this rule is that in using the public streets, the employee is subject only to risks which the general public is subject to, and not risks inherent in his type of work.

■ There are also several well recognized exceptions to this general rule. Among these exceptions urged by appellant as applicable to this case are (1) injuries sustained when the employee is traversing an access route to his employer's premises, (2) injuries sustained when off the premises of his employer when the employee is acting under expressed or implied instructions of his employer, and (3) injuries sustained while off the employer's premises while engaged in activities so related to the employee's job as to be considered on-the-job injuries.

■ We are of the view the court did not err in instructing a verdict.

■ The facts of this case do not bring the case within the exception which allows compensation when the employee is traversing an access route. This rule is applicable only where the accident occurs at a point so closely related to the employer's premises as to be considered in reality a part of the premises. Illustrative of this rule are the cases of Kelty v. Travelers Insurance Co., 391 S.W.2d 558 (Tex.Civ. App.—Dallas), ref'd, n. r. e. and General Insurance Corp. v. Wickersham, 235 S.W. 2d 215 (Tex.Civ.App.—Ft. Worth), ref'd, n. r. e., cited by appellant. In those cases, however, the employee was at a point within a few feet of where the work was to be performed and was actually in the process of going to his work. Such is not true of

the case before us as a reading of the above facts reflects. Appellant was proceeding away from the employer's premises on an errand of his own.

The third exception to the general rule of the "street risk" cases is not applicable here. This exception contemplates the additional condition that the normal course of the employee's business for his employer includes being subject to the risks of the highway. This exception is illustrated by Shelton v. Standard Insurance Co., supra. Under the facts of that case compensation was allowed as an exception. Briefly, the facts were that Shelton was a truck driver employed to drive from Abilene, Texas to Wichita, Kansas. The trip would require about thirty-three hours. His eating and sleeping times were largely dictated by the contingencies inherent in his work. He was forced to stop in Dallas due to mechanical problems with his rig. This prevented his continuing to Wichita. His truck could not be loaded until morning. When crossing a street to eat he was hit by a car and injured. The injury had its origin in a risk created by the necessity of eating in order to carry out the specific job assigned to him.

We have no such case here. Appellant was on no specific mission the nature of which contemplated his going to the doughnut shop to further the employer's business.

The last exception to the "street risk" rule relied upon by appellant is best characterized in Janak v. Texas Employers' Ins. Ass'n, 381 S.W.2d 176 (Tex.1964), and Johnson v. Pacific Employers Indemnity Co., 439 S.W.2d 824 (Tex.1969). Both cases involve drilling rig crews, and car pools or ice water employed for the use of the whole crew. Also, both cases involve the construction of another part of the Workmen's Compensation statute, that part being the section dealing with autos furnished or travel paid for by the employer, Article 8309, Sec. 1b. This exception to the general rule is also inapplicable to the present case. Under the evidence Shubert could not be considered to have been impliedly ordered to cross the street to the doughnut shop. The fundamental distinction is that the ice water acquired by the employee in the above cases was for the whole drilling crew, a mission designed to benefit all the employees and consequently improve their performance. Further, at least in Janak, the drilling contractor paid for the ice. Here, the trip for coffee was solely personal, and not to benefit all the employees.

Appellant urges that this case is controlled by Texas Employers Ins. Ass'n v. Davidson, 295 S.W.2d 482 (Tex.Civ.App. —Ft. Worth 1956, writ ref'd, n. r. e.). In Davidson, the injured employee was on her lunch period. She had just finished her sack lunch at her machine and was injured when walking to deposit her refuse in a barrel. Her employer approved of the employees eating at their machines. The most telling fact which distinguishes this case from the present case is that the employees were *directed* to deposit their refuse in the can provided specifically for that purpose which directly benefited the employer by keeping the premises clean. In walking to the barrel, Mrs. Davidson was also following standing orders of her employer.

The case most closely analogous to the present case is Roberts v. Texas Employers' Ins. Ass'n, 461 S.W.2d 429 (Tex.Civ. App.—Waco 1970, writ ref'd). In Roberts, the employee was prepared to start work, she had already punched the time clock and had her coffee. She "happened to think" that she needed a pasteboard box, and asked her superintendent if she might have one of her employer's boxes in which to mail some cookies to her son. She had not started work, but "was ready to go to work." The superintendent told her she could have the box, and she took it to her car. She was injured on the way to the car. The late Judge Wilson held that she was on a purely personal mission, and she was in no way engaged in the furtherance

of her employer's affairs or business, a prerequisite under Art. 8309, Sec. 1.

The facts of the instant case are even stronger for holding that the employee was not in the course of his employment when injured. In Roberts, she was on her employer's premises and prepared to start work. Here, Shubert had not even been able to gain entrance to his place of work. The controlling similarity is shown in that both trips on which the respective employees were injured were purely personal missions.

Each case must be decided on its own peculiar facts. Texas Employers' Ins. Ass'n v. Anderson, 125 S.W.2d 674 (Tex. Civ.App.—Dallas 1939, writ ref'd). While the question of "course of employment" is ordinarily a question of fact, under the facts of this case, when viewed in the light most favorable to appellant, Shubert was not in the course of employment when he was injured, as a matter of law. His mission was purely personal to him, and the risks to which he subjected himself in crossing Telephone Road were certainly not of a character that had to do with or arose out of his employment as a diesel mechanic.

Affirmed.